***NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUAN ZALAZAR, | : | |
| | : | Civil Action No. 16-7092 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ERICA STEM, et al., | : | |
| | : | |
| Defendants. | : | |

**WIGENTON**, District Judge:

Plaintiff, Juan Zalazar, filed a complaint against Defendants, Erica Stem, Merril Main, Sgt C. Davis, Lt. D. Day, and Sgt. Lomey, on October 12, 2016.  (ECF No. 1).  On November 15, 2016, this Court granted Plaintiff's application to proceed *in forma pauperis*.  (ECF No. 3).  Because Plaintiff has been granted *in forma pauperis* status, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.   For the reasons set out below, this Court will allow Plaintiff's interference with treatment for non-medical reasons claims to proceed against the D.O.C. Defendants (Stem, Davis, Daye, and Loney) only, and will dismiss all of Plaintiff's remaining claims without prejudice.

**I. BACKGROUND**

Plaintiff, Juan Zalazar, is currently civilly committed to the East Jersey State Prison Special Treatment Unit (STU) in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator ("SVP") Act , N.J. Stat. Ann. § 30:4-27.24 *et seq.*  In his current complaint, Plaintiff chiefly complains of his having been the subject of alleged mistreatment by corrections officers employed by the New Jersey Department of Corrections during his involuntary commitment. Specifically, Plaintiff alleges that he has been subjected to numerous searches without cause by both standard corrections officers and members of the facilities "S.O.G." unit, who are apparently tasked with conducting searches for contraband.  (ECF No. 1 at 10-24).  Plaintiff first asserts that the S.O.G. officers have on multiple occasions brought search dogs into the kitchen area of the facility, which he asserts in unsanitary.  (*Id.* at 10).  While this activity appears relatively innocuous, Plaintiff also asserts that the S.O.G. and D.O.C. officers have conducted numerous searches of his possessions and cell and have confiscated his personal property.  (*Id.* at 11). Plaintiff further contends that his property, including appliances, have also been destroyed, and that when he complains about the destruction of his property, he is then subjected to further searches resulting in more damaged or missing property.  (*Id.* at 12).  Plaintiff contends that these searches, which he believes are conducted on a whim and without cause, further impugn his rights because he has on occasion been strip-searched as part of the search process and because therapy groups are cancelled in his unit during the searches.  (*Id.*).  Plaintiff also states that being searched causes him to be angry or aggressive in his group therapy sessions, which is not conducive to his fully appreciating that therapy.  (*Id.*).

Although many of Plaintiff's allegations are non-specific and not tied to individual

2

incidents, he does provide more information about a few of his run-ins with the D.O.C. staff. On October 6, 2016, for example, group therapy in his unit was temporarily cancelled so that security cameras could be installed in Plaintiff's housing unit. (*Id.* at 16-17). Upon asking about the cancellation, Plaintiff alleges he was told by Sergeant Davis that the "work of construction comes before treatment in this facility." (*Id.* at 17). Plaintiff also alleges that, on October 4 and 5, 2016, treatment was also cancelled because the S.O.G. officers were conducting their searches of his unit, at which point these officers, alongside Defendants Loney and Davis, disparaged him by labeling him in some unknown way, and he was eventually placed into disciplinary M.A.P. status for "mystery reasons" resulting in his being put into solitary confinement. (*Id.* at 17-18). Plaintiff further contends that when he complained about the random searches and the interruptions in treatment resulting from them, he was told that treatment was not important by the D.O.C. assistant superintendent, Defendant Stem. (*Id.*). Plaintiff also states that, when he is placed onto M.A.P. status, he is not allowed to present witnesses in his defense, and is simply placed into temporary close custody without a hearing or full explanation. (*Id.* at 18-19).

Plaintiff's final series of complaints relate to the treatment he receives from D.O.C. staff when being placed into temporary close custody. (*Id.* at 7). Specifically, he alleges that Loney told "his officers to tightly handcuff" him and place him in "a cold empty cell with no mattress, sheets, or blankets." (*Id.*). Plaintiff contends this results in his having to "lay on a cold, steel [and] concrete bed." (*Id.*).

As Defendants in this matter, Plaintiff names four D.O.C. employees – Lt. D. Daye, a supervisory corrections officer; Sgt. Loney, another ranking corrections officer; Sgt. C. Davis, a supervisor of corrections officers, and Erica Stem, Assistant Superintendent of the Special

3

Treatment Unit.  (*Id.* at 3-9).  Plaintiff also names a single member of the treatment staff, Dr. Merrill Main, who is the Director of the facility's treatment teams and who is employed by the New Jersey Department of Human Services.  (*Id.* at 4).  As to Dr. Main, Plaintiff alleges only that he "disregards" the abuses inflicted upon him by the D.O.C. Defendants and tells his staff to also disregard the complaints Plaintiff raises about his treatment by the D.O.C.  (*Id.*).

## II. DISCUSSION

### A. Legal Standard

District courts must review complaints in those civil actions in which a litigant is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B).  The statute directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   As Plaintiff brings his claims *in forma pauperis*, his complaint must be screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS*

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff seeks to make claims against defendants for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]").  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  In this matter, Plaintiff appears to be raising the following claims: a claim against the D.O.C. Defendants for unreasonable searches under the Fourth Amendment, a Fourteenth Amendment claim regarding the allegedly improper confiscation or destruction of his property by S.O.G. and corrections officers, a claim

5

that he is denied Due Process in being placed into M.A.P. custody without a hearing or investigation, and a Fourteenth Amendment claim based on his being denied treatment for non-medical means. Although it is not clear, Plaintiff may also be attempting to raise a conditions of confinement claim, a First Amendment retaliation claim, and an excessive force claim against the D.O.C. Defendants.[2]

**1. Plaintiff has pled insufficient facts connecting Dr. Main to the acts of the D.O.C. Defendants**

While seemingly all of the actions about which Plaintiff claims were undertaken by the various D.O.C. Defendants, Plaintiff also attempts to hold Merril Main, M.D., the head of the D.H.S. treatment staff at the Special Treatment Unit, liable for these same claims by asserting that Main disregarded the behavior of the D.O.C. Defendants. Petitioner essentially asserts that Main should be responsible for the actions of the D.O.C. Defendants, who are not his actual subordinates. Plaintiff does not plead any actual action on Main's behalf, only that he disregards the actions of

---

[2] Plaintiff also in two places states that corrections officers placed a "false light" upon his name by labelling him in an unknown way. This Court does not construe Plaintiff to be attempting to raise a claim for the tort of false light based on these two fleeting and conclusory references. To the extent that one could construe this as an attempt to make out a state law claim for false light, a tort at the juncture between invasion of privacy and defamation, Plaintiff has at best pled a conclusory allegation and has not pled a cognizable claim for relief as he has not pled facts suggesting that he was subject to public shaming based on false, offensive labels placed upon him, and thus his purported false light claim would need to be dismissed if he did intend to bring such a claim. *See Hickox v. Christie*, --- F. Supp. 3d ---, 2016 WL 4744181, at *19 (D.N.J. 2016) (tort of false light in New Jersey involves "publicity that unreasonably places [the plaintiff] before the public, and requires that a plaintiff plead that "(1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed).

the D.O.C. Defendants, despite the fact that Plaintiff does not suggest that Main has any control over them.

A "defendant in a civil rights action must have personal involvement in the alleged wrongs," and a plaintiff must therefore plead that each defendant, supervisor or direct actor, had direct involvement in the alleged violations of his constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  A defendant may therefore not be held liable under § 1983 based solely on the operation of *respondeat superior*.  *Id.*; *see also Iqbal*, 556 U.S. at 676. Thus, in order to plead a violation by a high ranking or supervisory defendant, a plaintiff must generally plead either that the supervisor's "establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct."  *Doe v. New Jersey Dep't of Corr.*, Civil Action No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (§ 1983 Plaintiff pleading supervisory liability must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable").  Plaintiff has pled no such claim as to Dr. Main.  Plaintiff pleads only that Main does not stop or otherwise get involved with the operations of D.O.C. staff.  As Plaintiff does not plead that Main himself established any of the policies under which the D.O.C. are operating, nor that Main participated in the alleged wrongs, Main's alleged failure to intervene in the actions of the D.O.C. in securing the Special Treatment Unit is insufficient to state a claim.

Without some allegation showing Main's direct involvement in the alleged wrongs, Plaintiff's claims against Main fail to state a claim, and all of Plaintiff's claims against Dr. Main are dismissed without prejudice.

**2. Plaintiff's unreasonable search claims**

Plaintiff contends that he was subjected to frequent and random cell searches by members of the facility's S.O.G. unit, and was ultimately strip searched on one occasion, which he contends are unreasonable searches. As this Court has explained,

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1988) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interest." *Id.* at 619 (quotations marks and internal citation omitted).
>
> In *Hudson v. Palmer*, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. *Id.* at 529. The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." *Id.* at 530. The Court observed that:
>
>> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. . . . [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional

8

> security. . . .  [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

*Id.* at 527–28 (footnotes, citations and internal quotation marks omitted).  The same conclusion was reached with respect to pretrial detainees other than convicted prisoners.  *See Bell v. Wolfish*, 441 U.S. 520, 558–560 (1979) (finding that a body cavity searches of pretrial detainees do not violate the Fourth Amendment)[.]

Consequently, involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally.  *See Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009) (noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness), *cert. denied*, 130 S. Ct. 465 (2009); *Allison v. Snyder*, 332 F.3d 1076–79 (7th Cir. 2003) (SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished"), *cert. denied*, 540 U.S. 985 (2003); *Aiken v. Nixon*, 236 F.Supp.2d 211, 233 (N.D.N.Y. 2002), *aff'd*, 80 Fed. Appx. 146 (2d Cir. 2003); *see also, Jennings v. New York State Office of Mental Health*, 786 F.Supp. 376, 382, 384 (S.D.N.Y. 1992), *aff'd*, 977 F.2d 731 (2d Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth Circuit has held that, because SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others, they are subject to "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective management of [the] detention facility."  *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).  Thus, the reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry.  *Id.*

*Belton v. Singer*, No. 10-6462, 2011 WL 2690595, at *8-9 (D.N.J. July 8, 2011).  Based on this legal background, this Court concluded in *Belton* that, absent allegations of unprofessional,

embarrassing, or violent circumstances, a single strip search for security reasons was not unreasonable given the limited expectation of privacy available to a civilly committed S.V.P. *Id.*

Here, Plaintiff has alleged two kinds of searches – random searches of the facility and his cell, and a strip search. The former, random security searches, are not unreasonable because, like pre-trial detainees, civilly committed S.V.P.s lack an expectation of privacy in their cells, and such a search is constitutionally permissible. *Id.*; *see also Bell*, 441 U.S. at 558–560. As to Plaintiff's claim that he was strip searched, Plaintiff pleads no facts other than the strip search itself. He does not allege that the searches were conducted under violent, extreme, or humiliating circumstances, and thus this Court cannot infer that the search in question was unreasonable. *Belton*, 2011 WL 2690595. Indeed, Plaintiff provides no context for his assertion that he was strip searched, and does not explain why it was unwarranted, or how it humiliated him other than the mere fact that he was strip searched. Thus, absent facts showing that the strip search in question was in some way unreasonable, Plaintiff has failed to state a cognizable claim for relief as to either of his search related claims, and those claims are dismissed without prejudice as to all Defendants.

**3. Plaintiff's procedural Due Process claim**

Plaintiff next claims that he has been denied Due Process as he has been placed into disciplinary M.A.P. status without a hearing or investigation. Plaintiff's claim, however, is based on a false premise: that he is entitled to Due Process before being placed onto M.A.P. status in the first instance. An individual's Due Process rights attach in such a disciplinary setting only where the plaintiff has a cognizable liberty interest which is being impugned by the disciplinary action

10

being taken against him. *See, e.g., Deavers v. Santiago*, 243 F. App'x 719, 721-22 (3d Cir. 2007).

As the Third Circuit explained in *Deavers*,

> In *Sandin* [*v. Conner*, 515 U.S. 472 (1995)], the Supreme Court determined that there was no cognizable liberty interest in freedom from additional restraint in a prison setting. *See* [*Id.* at 486] ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."). Put another way, unless the deprivation of liberty is in some way extreme, then the Constitution does not require that a prisoner be afforded any process at all prior to deprivations beyond that incident to normal prison life. Our Court later extended *Sandin's* foreclosure of procedural due process protections to a situation like that presented here-a plaintiff civilly committed in New Jersey claiming a procedural due process violation by his wrongful placement [on MAP status]. *See Leamer* [*v. Fauver*], 288 F.3d [532,] 546 [(3d Cir. 2002)]; *see also Thielman v. Leean*, 282 F.3d 478 (7th Cir. 2002) (likewise extending *Sandin* to civil commitment settings).

*Deavers*, 243 F. App'x at 721-22. Nothing Plaintiff has pled suggests that his being placed on M.A.P. status, with or without explanation, has resulted in an extreme divergence from the everyday nature of his civil commitment, instead it seems to have resulted in a temporary placement in close custody, which while uncomfortable, is not so extreme a sanction as to deprive him of a cognizable liberty interest. *Id.* Without some allegations to suggest that the length of that placement was excessive, or was subject to continuous harsh penalties for a sufficient period of time to amount to an extreme divergence form the normal incidents of committed life, Plaintiff fails to present a cognizable claim for a denial of Due Process as he has not presented a valid liberty interest which has been impugned, and his procedural Due Process claim is dismissed without prejudice at this time. *Id.*

11

### 4. Plaintiff's Substantive Due Process Claims

Plaintiff also presents a substantive Due Process Claim in which he asserts that the D.O.C. Defendants, by cancelling therapy during construction work, or searches by the S.O.G., and by placing Plaintiff in M.A.P. status for non-treatment reasons, have reduced his required medical treatment for non-medical purposes. At this time, this Court perceives no basis for the dismissal of this claim against the named D.O.C. Defendants, and that claim shall be permitted to proceed against all Defendants other than Merril Main.

### 5. Plaintiff's Deprivation of Property Claims

Plaintiff also contends that he has been deprived of his property which was either improperly confiscated or destroyed during various searches. To assert a Due Process claim for the deprivation of one's property by a public official, a plaintiff must assert that he possessed a property interest, that he was deprived of that interest by a state actor, and that he was not provided notice and an opportunity to be heard in relation to the taking of his property interest. *See Rusnak v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002). "Where a state actor deprives an individual of property without authorization, [however,] either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981); *overruled in part on other grounds*, *Daniels v. Williams*, [474 U.S. 327] (1986)." *Love v. New Jersey Dep't of Corr.*, Civil Action No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015); *see also Miller v. Fraley*, No. 12-4470, 2015 WL 511296, at *11 (D.N.J. Feb. 6, 2015). The State of New Jersey has provided a

proper post-deprivation remedy to plaintiffs for the unauthorized deprivation of their property through the New Jersey Tort Claims Act. *See N.J. Stat. Ann.* § 59:1-1, *et seq.*; *Love*, 2015 WL 2226015 at *5; *Miller*, 2015 WL 511296 at *11. Because Plaintiff contends that his property was taken or destroyed without cause, he has alleged that his property was seized without legal authorization, and as such his claim must be dismissed because a proper post-deprivation remedy is available to him. Plaintiff's deprivation of property claim must therefore be dismissed without prejudice.

**6. Plaintiff's Remaining Claims**

While it is not entirely clear from his complaint, Plaintiff may also be seeking to raise claims for excessive force, poor conditions of confinement, and retaliation. As to excessive force, Plaintiff pleads only that he was handcuffed tightly while being taken into custody. Plaintiff does not plead that he was cuffed overlong or in a way that was actually damaging rather than simply uncomfortable, or that any other force was used against him. He has thus pled no more than *de minimis* use of force against him in his current complaint, which is insufficient to state a claim for excessive force where the force used is not of a type "repugnant to the conscience of mankind." *See Hudson v. McMillian*, 503 U.S. 1, 10 (1992). Thus, without further facts Plaintiff has failed to plead a plausible claim for excessive force, and that claim is dismissed.

Plaintiff's apparent retaliation claim fairs no better. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory

13

action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463 F.3d at 296 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Here, Plaintiff pleads only that he complained about cell searches, and then had his cell searched again. Because the nature of Plaintiff's unreasonable search claim is that repeated and unnecessary searches are being conducted without cause, Plaintiff has not pled sufficient facts to show a connection between the additional searches and his complaints, nor that the searches themselves were sufficient to deter an ordinary person from further complaint. He has thus at best pled a conclusory allegation of retaliation, and this claim, to the extent Plaintiff is raising it, is dismissed without prejudice as well.

The final nascent claim which Plaintiff may have wished to bring is a conditions of confinement claim based on his being placed into close custody, at which time he was placed into a cold cell without a mattress or the like, and had to lay on a hard metal or concrete bed. Plaintiff, however, pleads no facts as to how long he was left in the cell without a mattress or bedding, nor how cold it was, nor what other conditions were inflicted upon him. Without more facts, this Court cannot infer that the conditions Plaintiff faced caused him to "endure such genuine [de]privations and hardship over an extended period of time" that the conditions of confinement became excessive in relation to the security and treatment purposes for which M.A.P. status is used. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008). As such, Plaintiff has pled insufficient facts to make out a conditions of confinement claim, and any such claim Plaintiff wished to raise is dismissed without prejudice.

## III. CONCLUSION

For the reasons stated above, this Court will allow Plaintiff's interference with treatment for non-medical reasons claims to proceed against the D.O.C. Defendants (Stem, Davis, Daye, and Loney) only, and will dismiss all of Plaintiff's remaining claims without prejudice. An appropriate order follows.

Dated: December 20, 2016             *s/ Susan D. Wigenton*
                                     Hon. Susan D. Wigenton,
                                     United States District Judge